Thank you, Your Honor. Ethan Shulman for AT&T Mobility and related affiliates. If I may, I'd like to try and reserve two minutes for rebuttal. Okay. We have ceded five minutes to the Attorney General as a security eye. Okay, and as I... So, let me make sure I understand. Don't start the clock yet. We're doing some housekeeping here. It's ten-five. So, yeah, okay, so you've got... yeah, so you've got... I'm going to give him... you've got ten, but you want to reserve two. If I may. So, okay, so we're going to go eight minutes into your time then. Okay. Very good. Please. Now I'll start the clock. Thank you, Your Honor. May it please the Court. The Due Process Clause permits a state to apply its own forum law to a plaintiff's claims so long as a modest test is met. That is, that there is a significant contact or a significant aggregation of contacts creating state interests such that choice of its law is neither arbitrary nor fundamentally unfair. Here, instead of applying that test, the district court devised its own test, and it devised a test unique to the particular category of cases, the exciting category of antitrust cases that Your Honor referred to earlier, and held that in an action for damages from a price-fixing conspiracy, unless the plaintiff's purchased the price-fixed goods within the state, due process prevents the state from applying its own antitrust law to the conspiracy, regardless of any other contact the state may have with the parties or the conspiracy. Counsel, as I look at it, it looks to me like the district court applied the Lex Loci Delecti Rule, the very old, old, old rule, and I'm not sure how the district court squared that with Allstate Insurance v. Hague. Do you agree with that? I do, Your Honor. I don't believe the district court's rule can be squared with Allstate. Indeed, Allstate itself squarely rejected the argument that the due process test should turn on where the injury occurred, which is essentially what the district court ruled. But how do we deal with the issue, at least as I understand what's been framed here? You've got at least the State involved here that says that there's no relief in this indirect purchase situation. So depending on what State it occurs in, even though California may have some interest, you've got an entirely different result. How does that get squared with Allstate, if at all? It doesn't, Your Honor, because it raises a different issue. It raises a conflict of laws issue, not the due process issue. Okay. So from your perspective, that's the analysis is conflict of laws, this traditional conflict of laws approach. But in an, and I'm using this term in a very generic sense, in the international shoe sense, there's just no problem from your perspective. That's right, Your Honor. The conflict of laws was not raised below. It wasn't ruled upon by the district court. It's not the issue that was certified here. The, and there's a very clear distinction, of course, between the due process test, on the one hand, and conflict of laws. Conflict of laws in California applies the governmental interest analysis, and there's a weighing factor, and those kinds of issues do get addressed. What are the comparative interests of the two or more States whose laws are asserted? That's not the issue here. The only issue here is did California have a significant enough interest to clear the modest due process hurdle? And would you, just from a factual basis, would you recount exactly how California is involved in this price-fixing allegation? And what I mean is how is California, and your consumers, affected by this particular alleged scheme? I, Judge Smith, I'd break the answer into three categories. Okay. First of all, we're talking about a price-fixing conspiracy here that affects an entire industry in which the defendants named in this case, nearly all of them operated in, did, all of them did business in California. Nearly all of them had subsidiaries or affiliates that were incorporated in California or had corporate headquarters or offices in California. So the first factor, does the State have an interest in regulating California corporations or out-of-state corporations that do business within the State and ensuring that they comply with California State law? Of course it does. That's a legitimate interest in and of itself. But let me turn to the second category because I think it is right at the heart of what is most important here. And that is illegal conduct within the State. The heart of the allegations in the second amended complaint is that this conspiracy took place in substantial part within California. There were price-fixing discussions and meetings that took place within the State. Information was exchanged. Information on supply was exchanged. As I recall, most of it was allegedly on the phone. Were there person-to-person meetings in the State of California as well? There were some and there were also telephonic communications through, again, through the California-based subsidiaries and affiliates. Indeed, the allegation is that the conduct here was, the U.S. conduct at least, in furtherance of this conspiracy, was centered in California and that defendants used their California affiliates in order to effectuate the conspiracy. For purposes of conspiracy law, the fact that you've got different corporate entities is irrelevant, right? In the sense, if you can show that these various affiliates participated, it doesn't matter that they're different entities. I think that's right, Your Honor. In fact, of the nine principal defendants here, seven had affiliates or subsidiaries operating in California. And if I may, I just wanted to add one more thing, if I may. I'm sorry. Of course, we have one other factor here. We're not basing this purely on allegations. We're basing it on sworn testimony, some of which is summarized in our brief under seal, so I won't go into the details. But there's a third factor, and of course, that is the criminal guilty pleas by many of these defendants and the recent criminal conviction of yet another defendant of price fixing in violation of the Sherman Act through acts that the jury found and the defendants admitted in their pleas, substantial acts in furtherance of the conspiracy within the Northern District of California. Now, would those findings of a jury in a criminal case be collaterally implicate the findings and what, I don't know what you'd call them here, determinations that we should consider as being treated as proven, or how do we treat those? Your Honor, we're not suggesting that the Court afford formal collateral estoppel effect. We are suggesting that the allegations in the Second Amended Complaint which conclude allegations of these very guilty pleas and the recent motion for judicial notice as to the recent criminal conviction are one of the factual factors that the Court needs to consider. Of these seven entities, how many, if any, have their primary corporate domicile in California? You know, I don't have the figures on that, Your Honor. I believe there's at least one or two that actually have California corporations as subsidiaries or affiliates. Seven of them, however, seven of them, nine are alleged to have operated through companies with principal headquarters or significant corporate bases here. AUO, which is the named defendant which was recently criminally convicted, had facilities in Cupertino and I believe in one other in San Diego in California. You want to save your time? I think your co-counsel's got five minutes, if I recall. I will. That will leave you an extra two minutes, then. Thank you, Your Honor. Very good. Let's hear from, I believe you're representing the State of California, is that right? Okay. May it please the Court. I am Deputy Attorney General Emilio Veronini, appearing on behalf of Amicus Curiae, the State of California. I thought I would first start off on behalf of the State by talking about the legitimacy and strength of our interest in enabling out-of-State plaintiffs to be able to recover out-of-State damages so long as there is a sufficient factual nexus between their claims and the State of California itself. Now, are you going to be arguing on the basis of conflict of laws analysis or on the basis of, say, the all-State case and what the Court said there? We obviously support all-State. We talked about all-State inshuts and Alaska Packers in our brief, and we concur with Your Honor's question that all-State rejects the doctrine that you have to look at a conflict between State interests to determine where really the home of the claim is. Indeed, quite to the contrary, all three of those cases emphasize that for due process purposes, more than one State can have jurisdiction, because the aim of the due process clause, insofar as it applies to claims, is very limited. It's just trying to figure out is there enough reasonable notice here given to defendants that these types of claims could end up in a specific State's courts. That's it. So if there are issues with conflict of interest between differing States, that is handled, as we have pointed out in our briefs, and this was the third point I'm getting to, but I'm flipping the order around here. We believe that that's handled both through conflict of laws analysis as well as by Congress. And in terms of the conflict of laws analysis, California knows how to apply that. We have a government interest standard. So if this Court were to look to cases such as Sullivan v. Oracle, which is briefly the great class certification case that is decided by the California Supreme Court and that deals with nationwide classes, one can see that California has a robust conflict of laws analysis that deals with conflicting interests. But that's not what we're talking about here. Here we're only talking about does the State have a legitimate interest and are there significant contacts between that interest and the State itself, i.e., are there substantial facts that say that the defendants are reasonably on notice that these claims could end up having them be hauled into a given State's court. And here we, California, do have such legitimate and strong interests. First of all, as Clayworth v. Fizer points out, California's laws are not about damages. They're not about compensating people in the first instance. They're about deterring wrongful conduct. They're about deterring price fixing and other types of anti-competitive conduct. And as both California courts and U.S. Supreme Court have recognized, you cannot deter anti-competitive conduct without affording both out-of-State plaintiffs, as the Cartwright Act expressly does, as well as in-State plaintiffs the right to recover damages. And whenever California has considered the issue of, well, how do we effectuate deterrence? How do we ensure that defendants do not commit anti-competitive conduct? California has always answered that question in favor of maximum deterrence, even if, as Clayworth points out, even if it means defendants overpay their damages. So, for example, in Clayworth, California rejected the idea of there being a pass-on defense and embraced, as they pointed out in a previous case, Levi Strauss' Cypre. So, to here, California has a legitimate and strong interest in ensuring that out-of-State plaintiffs can recover for out-of-State damages, so long as there are substantial facts that connect the underlying conspiracy or anti-competitive conduct with the claims that are being asserted here under State law. Kennedy, I assume that the factual allegations that Mr. Shulman mentioned are of the nature that you're referring to, right? They would be of the nature that we're referring to. Now, the State of California has not offered any opinion on whether these facts No, I understand that, sir. But assuming for a moment that those are correct, that they would meet the standard that, at least as far as California is concerned, of what you just talked about. As far as the State of California is concerned, that is correct, Your Honor. Okay. Forgive me, I've got to stop you, because your time is up. I understand that, and I've reached a concluding point anyway, Your Honor. So thank you very much. Well, timing is excellent. Good timing. Very good. So let's now hear from the opposition here, Mr. Taffet. Taffet, yes, sir. Nice to see you. Good morning, Your Honors, and may it please the Court, I am Richard Taffet. I'm with the Bingham McCutcheon Law Firm. I represent, and I'm arguing on behalf of the appellees in this case. Needless to say, we have a different view. Really? And would assert that the district court here did correctly apply the all-state and shuts test. Mr. Taffet, can you help me with all-state? Sure. I'm having real difficulty understanding how the district court applied all-state. Help me with that. So all-state and shuts afterwards. Sure. Applied the test, which required a showing that the state whose law is going to be applied, here, California, had a significant contact, not a modest contact, or as slight and casual as the amicus would argue, but a significant contact with both the parties and the transactions that give rise to the litigation. And in that regard, what the district court did here is evaluate, very importantly, what was the transaction that gave rise to this litigation. It is not a bright-line test, because the district court also took into account all of the allegations that were made in the pleading that's under appeal here, and concluded also that notwithstanding that there were these contacts that were alleged by the plaintiffs below, that they were not linked at all to the claims that are being asserted here. And in so doing, the district court followed the directive of shuts, the Supreme Court in shuts, and even this Court in the Mazza case, which requires an individualized assessment of the specific contacts of the state with the individual plaintiff's claims. And here, as this case has progressed and as we've submitted to supplement the record, what is clear, there's only one plaintiff below that has a claim for damages in this case, 18T Mobility. A Delaware corporation, headquartered in Georgia. There's absolutely not a single pleading in the or allegation in the pleading, Your Honor, which says that 18T Mobility engaged in any transactions which touched upon California. It didn't buy anything here. The transactions didn't flow through here. Yes, there are the generalized allegations that counsel alludes to, but they are not connected in any way to these particular plaintiffs. The individualized test would require that. Second, there is a absolute clear distinction, as the Court in shuts advised, between the analysis that's required under international shoe, for example, which Your Honor mentioned, for personal jurisdiction, and the choice of law constitutional due process argument that we have to meet or test that we have to meet here. Justice Stevens, in concurring in Allstate, raised that same point. For personal jurisdiction, which the context of the defendants may be relevant, is not the end of the story here. The court below, the district court, took into account all of the factors, the context, found no connection with the actual transactions that occurred here, and applied that to the specific types of claims that are being asserted here. And I think this is an important point, Your Honor, which is that here we have indirect purchaser price-fixing claims. The United States Supreme Court has held that on a Federal level, indirect purchasers cannot collect damages under the Illinois brick doctrine. I think, as Your Honor pointed out, different States have different rules of law. The underlying principle that Allstate and shuts and all of the cases that follow them apply is the significant connections that are required, establish and protect against the arbitrary application of a State's law. So here what we would have is transactions for this particular plaintiff, AT&T Mobility, that do not touch California. There may be a generalized principle in California law that's directed to protecting competition, consumers in California, and protects non-residents to a How much of a, I take your point about individual contact, but I mean, you know, AT&T Mobility does business in California. You may even have their cell phone contacts, for all I know. The reality is there are millions of consumers in California that are affected by a price-fixing scheme of this nature. Does the nature of the cause of action have any bearing at all on the Allstate analysis or on such? I believe it does, Your Honor, and that is why it is not a bright-line test. It has to be applied specifically to the case. I would note that you're correct, that there were claims that were brought on behalf of the people of California by the State of California. They had their own lawsuit for indirect purchasers that went forward. Notably, they did not try, they did not attempt to apply their law to the citizens of other States under principles of comity and also the type of arbitrariness that would result if that were the case. By chance, I should have asked the State, but do you know the name of the case that the State filed in this particular matter? I think it was State of California against, I think it's also AUO, but I am not certain of that. And it was, was it appealed, you know? I don't believe so. Okay, so this was in Superior Court here in San Francisco, or what? I can answer your question. If you would, please, yeah. What we brought was a parents' patchery-like case where we only represent actual persons in this State by statute, and it was resolved by a settlement. We didn't bring it into Superior Court, and it's entitled, I believe it's State of California versus Chung Wah Picture Tubes at all, but that would include all of the folks who are here in front of you today, Your Honor. Okay. I apologize for interrupting your time. We'll give you an extra 20 seconds, because we've taken that time away. That's greatly appreciated. Greatly appreciated. The point, though, is, again, that what we face here is if the appellant's from a policy standpoint, is essentially asking that any plaintiff could come into California, regardless of whatever the transactions are, and it's not a modest connection. And here again, let's talk about AT&T, the transactions have nothing to do with California, that we're at issue with right now, and say, because we prefer the remedies that we can realize under California law, we're going to ask the Court to apply California law. As compared to, for example, in this case, Georgia law. Georgia has announced its policy by not even adopting an antitrust law, by upholding a principle of freedom of contract, determining the prices, and whether I agree with it or respectfully whether the Court agrees with it, under our system, and the prevention of arbitrary application of one State's law versus another State's law, applying California law would impinge or infringe on the interests of Georgia. Let me ask your help on this, counsel. We, of course, live in a very different age today than, say, when the Sherman Act was enacted. Certainly. And here you're dealing with phone companies, advanced technology. A lot of people would be doing on the phone or in video conferencing things that previously would have involved personal meetings, because it would not have otherwise been possible. What role, if any, does the interconnectedness that we all now have, have on our analysis of contacts? I get the point about Georgia, and I'm concerned about that, because you do get varying results, and yet, you know, the Supreme Court will decide this. We've got people filing suit in California to come up to our court, where people in Argentina were thrown out of airplanes by the, you know, by the inferior or rather nefarious forces, and they're suing a subsidiary of Mercedes-Benz that's never done business in California, and yet, here we are. So, it's a different world. It's a very different world. We understand the constitutional imperative that there be due process, that there be fairness. But what role, again, to get back to my primary point, what role does the interconnectedness and modern communications play in our analysis? It's kind of hard to bifurcate, well, sorry, that's Georgia. Well, Georgia's a nanostack and away on the phone, or in a — does that make a difference? Well, Your Honor, to answer your question, it does play a role, and it makes this issue more complex. And I think it's indicative that there are a few cases which actually address this type of claim, an indirect purchaser price-fixing claim. I am not aware of a appellate court that has ruled on this yet, and certainly not the Supreme Court that has ruled upon it. You'll get one. Apparently, yes, yes, sir. But the point is, again, it's not just a fairness issue. Fairness issues is something that we have to look at under international shoe or personal jurisdiction. It's not a standing issue. There is no question that out-of-state residents can bring suits in California under California law. There is this issue of arbitrariness. And in this context, and in the context where I go back to the point that with this type of transaction where the Supreme Court has held how the Federal law will be applied, not permitting indirect purchaser damages claims, and thereby deferring or delegating to the States the decisions on a State-by-State basis, the question of do you permit the recovery of damages for indirect purchaser claims. Some States say yes, California. Some States say no. The difference there is, so we have to still look at what is the inherent nature of the transaction that is involved. And I think this is where the district court below did get it right, because she actually looked and tried to dissect the type of transaction that was involved. You compare this to the car accident in Allstate, it's a very difficult comparison. But there, the State interest was far different. There was a bit of a difference. And far less, perhaps. I would argue it was far more, because there, the conduct had a direct connection there. The transaction had a direct connection there. The insurance policy was going to be paid to a Minnesota resident, the deceased widow. The State had a clear interest, as the Supreme Court said, to keep people off the welfare rolls. Here, there is not the same interest directed towards AT&T as the party, and it's   And I think that the Supreme Court's law that's directed to protecting California consumers and California competition should be the deciding factor. The State of California, as stated, has brought its parents' patriot case. It brought it on behalf of the citizens of California. This is a corporate entity that has decided to do business all around the world, it's taking advantage of the law of a different jurisdiction, and is engaged in conduct that clearly is – would establish the minimum context for personal jurisdiction, but can't connect. And this is what Judge Ilsen below reviewed. She did not just say simply it's the next loci test. Right. But in effect, that's the test. I don't think so, Your Honor.  I think that the Supreme Court's action was dissecting and looking to what its import was and where there was a legitimate State interest. I would refer to the McCluney case, which is in our briefs, the Eighth Circuit, which talked about the test for due process purposes of having to take into consideration the imposition or the infringement of application of one State law on another, on another State's interest. I would also just like to comment briefly, as my time is winding down here, that there is some confusion here regarding the arguments that are being made that the choice of constitutional issue versus the traditional conflicts of law issue. The conflicts – certainly this Court can affirm on conflicts of law grounds. It's a de novo review, and you could do that. That was not argued below. That was not an issue that was addressed by the district court below, and that was not an issue that was appealed to this Court. That is a separate analysis, as this Court in the Maza v. Honda case laid out. Now, this is strictly a constitutional issue from your point of view, right? Correct, at this point. This Court does have the authority to, as I say, affirm on conflicts grounds, but that was not the issue that was appealed from. But notably, if we look at cases such as Maza, where the conduct that gave rise to that claim was the fraudulent representations that were then issued by Honda nationwide, were caught, relied upon by consumers nationwide, and the Court here held that that was sufficient to meet the constitutional standard. We don't have that here. We don't have any allegation that establishes that direct link. We have a far more attenuated connection here. And as this Court also, albeit in the conflicts of law context, observed, that where a State's law here, California, is sought to be applied to nonresidents, it is far more attenuated. And because of the circumstances of this case and the nature of the claims, it's even yet further attenuated. And to answer, go back again to the fact that we are in a – the World Wide Web. We have tremendous communications. In my humble opinion, and I would submit to you, Your Honor, that that makes it even more important to drill down very, very hard and recognize the nature of the transactions that we're dealing with and not permit the arbitrary application of one law because a plaintiff may get a better remedy than they otherwise might. Kennedy. But when we drill now, when we drill down, you're not advocating fracking, I trust. Not today. Okay. My client isn't in that business, Your Honor. Thank you very much. We'll wait until we will. Indeed. Indeed. Two minutes, counsel. Thank you, Your Honor. A couple of brief points, if I may. Let's go back to first principles. The question that you asked me and that you asked my friend is, how can the district court's ruling be squared with all State? And the short answer is that it can't. The all State plurality actually said, you know, we're dealing here with an incident where all of the parties in the accident were residents of another State, were residents of Wisconsin. The accident itself occurred in Wisconsin. The insurance policy was delivered in Wisconsin. But nonetheless, it is not a violation of the due process clause for the Minnesota courts to apply Minnesota law to the transaction. And the court said, effectively, it didn't matter that the accident occurred in another State, or even that the insured wasn't commuting to work in the neighboring State, because the court said, quote, numerous cases have applied the law of a jurisdiction other than the situs of an injury where there existed some other link between that jurisdiction and the occurrence. So there is the Supreme Court squarely rejecting the place of the injury rule that the district court here adopted. And as we've suggested in the briefing, a number of district courts in this circuit and in other circuits, and the California courts as well, have looked to the same kind of question. Regardless of the location of the injury or the purchase of the products, I'm referring here, for example, to Judge, Chief Judge Walker's decision, second decision in Peekover, which the district judge here did not have the benefit of when she ruled. Even though most of the video games that were the subject of that action were sold outside California, the court said, in the one decision, I think, that we've got that squarely on point here, there is no due process impediment to certifying a national class under California law because of the other contacts with the jurisdiction. Okay. I see that I'm out of time, and I thank the court for its patience. If you are not here, I was going to ask you what the founders would have thought about this, and I'm not going to do it. In any event, we thank counsel for an excellent argument. It's always a pleasure to have really fine lawyers appear before us and to argue with such cogency. It helps our job a lot, and we thank you. The case disargued is submitted, and the court is adjourned. All rise.
judges: Duffy, Gould, Smith